**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Radmacher, | No. CV-21-00735-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Louis DeJoy, | |
| Defendant. | |

At issue is Defendant Louis DeJoy's partial Motion for Summary Judgment (Doc. 73, MSJ), supported by a Statement of Facts (Doc. 74, DSOF), to which Plaintiff Michael Radmacher filed a Response (Doc. 77, Resp.), supported by a Controverting Statement of Facts (Doc. 80, PCSOF) and a Separate Statement of Facts (Docs. 78–79, PSSOF), and Defendant filed a Reply (Doc. 81). The Court finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants Defendant's partial Motion for Summary Judgment.

**I.     LRCIV 56.1(b)(1)**

As an initial matter, Defendant asks the Court to find that his Statement of Facts is undisputed because Plaintiff violated LRCiv 56.1(b)(1) by disputing 44 out of 73 paragraphs of Defendant's Statement of Facts without pointing to any evidence or reason why the facts were unsupported. (Reply at 2–4.) LRCiv 56.1(b), provides, in pertinent part:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a

correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph *and a reference to the specific admissible portion of the record supporting the party's position if that fact is disputed . . . .*

(emphasis added). The party opposing a motion for summary judgment has the burden of showing a genuine dispute of material facts exists, and courts "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (finding that "requiring the district court to search the entire record" is "unfair" to both the court and the movant and results in the court acting as the non-movant's lawyer).

Not only does Plaintiff, who is represented by counsel, dispute Defendant's 44 paragraphs in his Controverting Statement of Facts without citing to the record (PCSOF at 2–3), but he also only cites to the record or his Separate Statement of Facts three times in his Response. (Resp. at 7, 9.) Accordingly, the Court cannot rely on the Response to fill the gap created by Plaintiff's insufficient Controverting Statement of Facts. Likewise, part of Plaintiff's Separate Statement of Facts is not supported with citations (PSSOF ¶¶ 39–48), so the Court cannot entirely rely on it either.

Thus, because of Plaintiff's failure to comply with LRCiv. 56.1(b)(1), the Court will treat these 44 paragraphs as undisputed provided that there is support in the record for each of Defendant's factual assertions and the fact is not directly controverted in Plaintiff's Separate Statement of Facts.[1] *See Szaley v. Pima County*, 371 Fed. App'x 734, 735 (9th Cir. 2010) (affirming a district court's acceptance of a defendant's statement of facts where the plaintiff failed to comply with LRCiv. 56.1(b)(1)). The Court will also only accept the 44 paragraphs to the extent that the paragraphs do not assert as fact a question properly reserved for determination by the Court.[2]

---

[1] Paragraph 5 will also be treated as uncontested because Plaintiff did not state whether it was disputed.

[2] For instance, Defendant repeatedly asserts that Plaintiff's Equal Employment Opportunity

Defendant also asks the Court to summarily grant his Motion because Plaintiff failed to follow the Local Rules and the Court's Rule 16 Scheduling Order. (Doc. 12.) However, the Court declines to do so and will decide the Motion on its merits.

## II. BACKGROUND

The following facts are undisputed unless otherwise indicated. In 2015, Plaintiff began working for the United States Postal Service ("USPS") at the Phoenix Processing & Distribution Center ("Phoenix Center"). (DSOF ¶ 6.) On or about July 8, 2017, he was promoted to Supervisor of Distribution Operations ("SDO") by James Brenneman, Senior Manager of Distribution Operations ("Sr. MDO") and Lynise Trice, an MDO. (DSOF ¶ 6.) During his time working as an SDO, Plaintiff's salary has only ever increased. (DSOF ¶¶ 72–73.)

Plaintiff made EEO contact on January 22, 2018 and filed complaints alleging that he was subject to discrimination and retaliation while working as an SDO. (DSOF ¶ 5.) The Court lists the relevant background to each claim below, keeping the numeration used in the EEO filings.[3]

### A. Claim 1: Denial of Detail Opportunity

On January 18, 2018, Plaintiff asked Paul Lenahan, the lead manager of maintenance in Arizona, if there was a maintenance detail available. (DSOF ¶¶ 8–9.) Lenahan said he did not know, but there might be availability at the West Valley Center. (DSOF ¶ 9.) Lenahan then sent an email to Plaintiff and Dave Berry, the maintenance manager at the West Valley Center, who manages and approves maintenance detail assignments at that location, stating: "There may be a possible Detail opportunity at WV if you are interested. I have attached Dave Berry to this email he will be the one to contact. Good luck." (DSOF ¶¶ 10–12.) Plaintiff was not offered a detail opportunity by Lenahan or Berry. (DSOF ¶¶ 14–15.)

---

("EEO") activity was not a factor in employment decisions. (DSOF ¶¶ 36, 43, 54, 66.) However, this is an element of Plaintiff's retaliation claims, and the Court must look to the record to determine if Plaintiff can establish these decisions were retaliatory.

[3] Defendant does not seek summary judgment on Claim 5. (MSJ at 14 n.2.) Claim 6 was dismissed by the PSEEO before it reached a final decision on the other Claims. (Doc. 74-2 at 10.)

After receiving the email from Lenahan, Plaintiff emailed Brenneman, expressing an interest in the detail opportunity. (DSOF ¶ 19.) Brenneman did not communicate with Berry about the detail opportunity and was unsure if one existed. (DSOF ¶ 16.) On January 19, 2018, Brenneman replied to Plaintiff stating: "Since we just promoted you I would say you owe me at least a year before I will consider any detail opportunities. Get proficient at being a supervisor working for Mail Processing and I may consider detail opportunities for you in the future." (DSOF ¶ 20.) Plaintiff sent a follow-up email, but Brenneman did not respond. (PSSOF ¶ 17.)

Plaintiff asserts that Brenneman's email was not consistent with a management meeting or USPS policy. (PSSOF ¶¶ 10, 21.) At the meeting of Tour 3 SDOs and MDOs, the lead MDO stated that supervisors should ask for detail assignments and the requests will not be denied. (Doc. 79-2 at 31, Deposition of Brenneman ("Brenneman Dep.") at 120.) However, Defendant asserts that it was common practice for new SDOs to spend at least a year in their current positions to learn the ropes. (DSOF ¶ 22.)

Around the same time Plaintiff was promoted to SDO, on June 24, 2017, Jeanné Pearcy, a female SDO, transferred to the Phoenix Center. (DSOF ¶¶ 7, 27.) Before her transfer, she had supervisory transportation experience and had already been an SDO for approximately five months and was working at the Tucson Center with Renee Jones-Chaney, the Tucson Plant Manager. (DSOF ¶¶ 24–25, 27.) In August 2017, while Jones-Chaney was working at the West Valley Center on detail as Plant Manager, the sole transportation employee at that center received a serious medical diagnosis, and the Center needed someone with prior transportation experience to fill a detail. (DSOF ¶¶ 28–29.) Jones-Chaney contacted Richard Chavez, the Plant Manager at the Phoenix Center and requested Pearcy to fill the transportation detail assignment. (DSOF ¶ 30.) Chavez reached out to Brenneman, and Brenneman agreed that Pearcy could detail. (DSOF ¶ 31.)

**B.** **Claim 2: Change of Tour**

On January 17, 2018, Brenneman decided to move Plaintiff from Tour 3 to Tour 2, which are different shifts. (DSOF ¶ 32; Doc. 79-2 at 8, Brenneman Dep. at 26.) However,

Plaintiff was ultimately involuntarily moved to Tour 1 on February 3, 2018, which was short of SDOs. (DSOF ¶ 34; PSSOF ¶ 20.)

### C. Claim 3: Letter of Warning

Thomas Lindley, an MDO, issued a Letter of Warning ("LOW") regarding Plaintiff's absences for the dates November 29, 2017, December 22, 2017, and January 20–21, 2018. (DSOF ¶ 37; Doc. 74-6 at 11, EEO Affidavit of Lindley, Def. Ex. 15 ¶ 29.) However, Defendant asserts that Brenneman withdrew the LOW (DSOF ¶ 37), and Plaintiff asserts that Brenneman *believes* it was withdrawn, (PSSOF ¶ 18). Generally, an LOW is a first level corrective action regarding attendance and becomes part of an employee's personnel file, to which Plaintiff has access. (DSOF ¶¶ 38–40.)

### D. Claim 4: Change of Scheduled Days Off

While in training status on July 29, 2017, Plaintiff was assigned to E row operation and his days off were changed from Saturday-Sunday to Monday-Tuesday. (DSOF ¶ 48.) Then, out of training status, in December 2017, Trice assigned Plaintiff to different operations and his days off changed to Monday-Tuesday for one week and then Sunday-Monday the next week. (DSOF ¶ 50.) Finally, starting January 6, 2018, he was again assigned to a different operation and his days off were Monday-Tuesday during that period. (DSOF ¶ 51.) Trice has the option to change SDO schedules to ensure coverage of operations, and the operation to which an SDO is assigned determines his or her days off. (DSOF ¶¶ 44, 47.) Likewise, the days off of Vanessa Starr, another SDO, were also changed. (DSOF ¶ 52.)

### E. Claim 7: Assignment of Class Action Grievances

On June 2, 2018, acting MDO Shiva Allen assigned class action grievances to Plaintiff. (DSOF ¶¶ 55–56.) That night, only one other SDO was working, Angelique Sinclair, a female SDO, and Allen had already assigned Sinclair other duties of which Plaintiff was unaware. (DSOF ¶¶ 56–60.)

### F. Claim 8: Investigation[4]

---

[4] The Court discusses only the first subpart of Claim 8. Claim 8, as set out in the PSEEO final decision, is about two investigations: one investigation where Plaintiff was a

- 5 -

Plaintiff complained that Lisa Carlos created a hostile work environment on May 28, 2018, and Trice initiated an Initial Management Inquiry Process. (DSOF ¶ 64.) This was the only time Carlos and Plaintiff had argued, and typically, they got along fairly well and had only limited interactions. (DSOF ¶ 70–71.) On June 24, 2018, Lerene Wiley, an HR Manager, found that Carlos and Plaintiff argued, but based on different versions of the story, found that the cursing allegation was inconclusive. (DSOF ¶ 67.) A witness, Joyce Hackett, was overlooked during the investigation, but on July 10, 2018, Wiley requested a follow-up, and Hackett submitted a written statement. (DSOF ¶ 68.) After reading the statement, Wiley maintained her original findings. (DSOF ¶ 68.)

### G.  EEO and Court Activity

The PSEEO issued a decision on Plaintiff's claims on January 21, 2021, finding no discrimination. (DSOF ¶ 5.) In its decision, the PSEEO evaluated Claims 1, 2, and 4 in the context of gender discrimination, Claims 7 and 8 in the context of hostile work environment, and Claims 3 and 8 in the context of retaliation. (Doc. 74-2.)

After the EEO issued a final decision, Plaintiff filed a Complaint in this Court alleging two counts: gender discrimination and retaliation. (Doc. 1.) Defendant now requests summary judgment on Plaintiff's gender discrimination count on Claims 1, 2, 4, and 7 and on Plaintiff's retaliation count on Claims 2, 3, 7, and 8.[5] (MSJ at 7, 14.)

### III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA,*

---

complainant and a second investigation where Plaintiff was the subject of a complaint. Defendant makes no arguments regarding the latter.
[5] The Claims on which Defendant requests summary judgment do not entirely match the PSEEO's evaluation. For instance, Defendant requests summary judgement on Claim 2 under both gender discrimination and retaliation, but the PSEEO decision does not evaluate Claim 2 in the context of retaliation.

- 6 -

*LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

IV. **ANALYSIS**

Under Title VII, it is illegal for an employer to discriminate against employees on the basis of the individual's gender, 42 U.S.C. § 2000e-2(a)(1), or to retaliate against an

employee for engaging in protected activity, § 2000e-3(a). The Supreme Court's landmark employment discrimination case, *McDonnell Douglas Corporation v. Green*, sets forth the burden-shifting scheme that courts use to analyze Title VII claims. 411 U.S. 792, 802–04 (1973); *see also Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 784 (9th Cir. 1986) (applying the framework to a claim for retaliation). Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case. 411 U.S. at 802. To establish discrimination based on gender, plaintiffs must show that (1) they belong to a protected class; (2) they performed their job satisfactorily; (3) they were subjected to an adverse employment action; and (4) they were treated less favorably than similarly situated individuals outside of their protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802).[6] And to establish a prima facie case for retaliation, plaintiffs must show that (1) they engaged in a protected activity; (2) their employer subjected them to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

If the plaintiff is successful in establishing a *prima facie* case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory" reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. Finally, if the defendant articulates such a reason, the burden then shifts back to the plaintiff to prove that the defendant's proffered reason was merely a pretext for unlawful discrimination or retaliation. *Surrell*, 518 F.3d at 1108.

Here, assuming without deciding that Plaintiff can establish a *prima facie* case, the Court finds Defendant articulates legitimate reasons for the alleged adverse actions, and Plaintiff does not raise a triable issue as to whether Defendant's actions were a pretext for discrimination or retaliation. Because the standards are the same for both discrimination and retaliation, the Court discusses the claims together.

---

[6] Alternatively, plaintiffs alleging disparate treatment may proceed "by simply producing 'direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer.'" *Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1105 (9th Cir. 2008) (quoting *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007)). But here, the parties apply the *McDonnell Douglas* burden-shifting framework, so the Court will follow.

### A.     Legitimate Reasons

Defendant has presented legitimate, non-retaliatory and non-discriminatory reasons for the alleged adverse actions. Regarding Claim 1, Defendant contends that Brenneman did not allow Plaintiff to go on a detail assignment because Plaintiff was not performing his job satisfactorily and he was recently promoted and needed more training. (MSJ at 13.) For Claim 2, Defendant asserts that Brenneman ultimately moved Plaintiff to Tour 1 because it was short of SDOs, Plaintiff needed additional training and mentoring, and Tour 1 provided different training opportunities. (MSJ at 13; Reply at 5.) And for Claim 3, Defendant maintains that Plaintiff was given a LOW because during peak season, he violated Defendant's absence policy, of which Plaintiff was admittedly aware, multiple times within 90 days. (MSJ at 17; Reply at 9.)

Regarding Claim 4, Defendant contends that Plaintiff's days off were changed because days off are tied to different operations, and he was rotated amongst different operations because he was learning how to cover them. (MSJ at 14; Reply at 6.) For Claim 7, Defendant asserts that Plaintiff was assigned the class action grievances on Saturday nights because SDOs typically handled them, workload is lighter on the weekends, and the only other automation SDO already had been given other assignments. (MSJ at 14; Reply at 7.) And finally, regarding Claim 8, Defendant asserts that the incomplete investigation into Plaintiff's complaint was inadvertent and that the mistake was rectified after it was discovered. (MSJ at 17.)

All the presented reasons are supported by evidence in the record and are facially legitimate. Thus, the Court finds that Defendant has met his burden as to each claim he has targeted.

### B.     Pretext

The burden therefore shifts back to Plaintiff to show that Defendant's articulated reasons are pretextual. "An employee can prove pretext either: (1) 'directly, by showing that unlawful discrimination more likely motivated the employer'; or (2) 'indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally

inconsistent or otherwise not believable.'" *Mayes v. Winco Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017) (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004)).

Direct evidence consists of "evidence which, if believed, proves [discriminatory or retaliatory motive] *without inference or presumption*" and due to its obvious nature, does not need to be "specific and substantial." *Id.* (emphasis in original) (first quoting *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 662 (9th Cir. 2002), then quoting *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005)).

To prove pretext indirectly, "a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). Thus, although "an employer's deviation from established policy or practice" may show pretext, *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011), "such a deviation must be considered in context and may not always be sufficient to infer a discriminatory motive." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1149 (9th Cir. 2017). And "mere temporal proximity is generally insufficient to show pretext" for retaliation claims. *Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014); *see also Glass v. Asic N., Inc.*, 848 F. App'x 255, 258 (9th Cir. 2021) (finding that temporal proximity was insufficient to establish pretext because it did not directly rebut the defendant's reason for termination).

Here, Plaintiff has not proffered direct evidence showing that unlawful discrimination or retaliation motivated the decisionmaker's actions. Nor has he provided sufficient circumstantial evidence that Defendant's rationales for the decisionmakers' actions were mere pretext for discrimination or retaliation.

First, Plaintiff asserts that Defendant's reasons for failing to give him a detail opportunity are not legitimate. Plaintiff seems to argue that Defendant needs an "exception clause" in a policy to give one employee a detail opportunity but not another employee. (Resp. at 6.) Though it is conceivable that allowing managers to make detail decisions on a case-by-case basis and having no specific USPS policy that governs how detail

opportunities are given *could lead* to discrimination, it does not mean that discrimination happened here. And to the extent that Plaintiff suggests that Brenneman failed to comply with USPS policy by requiring Plaintiff to work one year before going on detail, even if true, this alone is not sufficient to create a triable issue of fact concerning pretext. *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1214–15 (9th Cir. 2008) (finding summary judgment appropriate despite decisionmaker's deviation from established policy).

Plaintiff also contends that Berry's declaration is inconsistent and "a façade offered to disguise unlawful conduct." (Resp. at 7.) But he fails to explain his reasoning. The statements identified in the paragraphs Plaintiff cites (PSSOF ¶¶ 34–43) are not inconsistent with each other. Nor are they inconsistent with Defendant's proffered reasons to decline to offer Plaintiff a maintenance detail opportunity; these paragraphs do not show that Plaintiff was performing satisfactorily and did not need more training as a supervisor. Further, Plaintiff's argument that Defendant's explanations are *post hoc* explanations created by lawyers (Resp. at 6–7) is unpersuasive; on January 19, 2018—before Plaintiff's first EEO contact or the filing of this case—Brenneman explained to Plaintiff that Plaintiff should "[g]et proficient at being a supervisor" before he would consider giving Plaintiff detail opportunities. (DSOF ¶ 20.)

Additionally, Plaintiff asserts that Brenneman treated Pearcy, a female SDO, differently than him because Brenneman allowed Pearcy to go on detail. However, Plaintiff fails to show that Brenneman's different decisions were "unworthy of credence because [they were] internally inconsistent or otherwise not believable." *Mayes*, 846 F.3d at 1280 (quoting *Fonseca*, 374 F.3d at 849). Pearcy had years of transportation experience and was given a detail assignment after a transportation employee had a serious medical diagnosis, which created a prioritized detail assignment, and a former co-worker and current Plant Manager—the highest-ranking employee at West Valley Center—requested Pearcy specifically to fill the detail. (DSOF ¶¶ 24, 29.) Notably, Pearcy had supervisory experience specific to transportation before transferring to the Phoenix Center (DSOF ¶¶ 24), and

Plaintiff has not presented evidence that Pearcy struggled in a supervisory capacity as Plaintiff was struggling. (DSOF ¶ 23.)

Further, Brenneman was one of the two people involved in promoting Plaintiff to SDO (DSOF ¶ 6), and it would be contradictory that he would give Plaintiff a work opportunity through promotion and then approximately six months later deny Plaintiff a different work opportunity because of Plaintiff's gender. *See Bradley v. Harcout, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996) (holding "that where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive"). Ultimately, Plaintiff has not pointed to "specific and substantial" circumstantial evidence indicating that Defendant's explanations are unworthy of credence, nor to any direct evidence that Brenneman's decision to deny a detail opportunity to Plaintiff was more likely motivated by discriminatory reasons.

Second, Plaintiff conclusorily argues that Lindley's actions towards Plaintiff were punishments and asserts that the punishments were approved by Brenneman. (Resp. at 7-9.) Lindley issued the Letter of Warning.[7] But even assuming that Brenneman was involved and that it is not common practice for a Sr. MDO to be involved with a LOW, showing of pretext is still insufficient. *See*, *e.g.*, *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1214–15 (9th Cir. 2008) (finding summary judgment appropriate despite decisionmaker's deviation from established policy). Brenneman's involvement could even support Defendant's proffered explanations because it could indicate that Plaintiff's poor work performance, including his absences, was worrisome enough for a Sr. MDO to get involved.

Plaintiff does not specifically argue in his Response that others were treated differently regarding the absence policy. However, he cites to a string of paragraphs in his Separate Statement of Facts that includes a paragraph stating that Lindley was aware other SDOs were not disciplined for attendance violations. (PSSOF ¶ 28.) The Court reads the Response liberally and construes this as an argument. At the cited portions of Lindley's

---

[7] Lindley was also involved in investigating the hostile work environment claim against Plaintiff that is not the subject of Defendant's Motion.

deposition, Lindley speaks about SDO Johnny Camou's attendance. (Doc. 79-4 at 23–24, 27–28, Deposition of Lindley, 88–91, 102–06.) But the information to which Plaintiff cites fails to establish that Camou did not engage in protected activity.[8] In fact, the PSEEO Final Agency decision indicates that Camou, like Plaintiff, had engaged in EEO activity (Doc. 74-2 at 47, Def. Ex. 5 at 23), so the Court cannot infer that the LOW was more likely issued to Plaintiff for retaliatory reasons.

Further, the evidence shows that Camou, unlike Plaintiff, took leave pursuant to the Family and Medical Leave Act and for the death of his spouse (Doc. 74-4 at 18, EEO Affidavit of Brenneman, Def. Ex. 15 ¶ 64), and it makes sense that a supervisor would give leeway to an employee dealing with a difficult circumstance. Thus, to the extent that Plaintiff argues that the USPS had a policy that supervisors cannot issue LOWs for only a few days of unscheduled absences and deviated from that policy to discipline Plaintiff, the evidence presented by Plaintiff does not sufficiently support this assertion. Additionally, Plaintiff's Separate Statement of Facts contradicts the existence of a policy: "there was no set standard" of attendance discipline. (PSSOF ¶ 28.) Accordingly, Plaintiff has not met his burden to show Defendant's explanations are pretext for retaliation.

Plaintiff's Response only contains arguments about the detail opportunity and "punishment" from Lindley; he does not make specific arguments regarding other claims. Failure to respond to an argument "may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." LRCiv 7.2(i). Further, it is Plaintiff's burden to "direct [the court's] attention to specific, triable facts." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009) (alteration in original) (quoting *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003) (affirming summary judgment where non-movant's response failed to identify specific facts that countered movant's position). Though it is not the Court's burden to do so, the Court nonetheless looked to Defendant's Statement of Facts and Plaintiff's Separate Statement of Facts and

---

[8] Plaintiff's Separate Statement of Facts states that Camou had no prior EEO activity. (PSSOF ¶ 46.) However, Plaintiff does not cite to any portion of the record that supports this assertion.

to cited portions of the record to identify where the evidence could show that Defendant's proffered reasons are pretextual. In doing so, the Court has found no direct evidence of pretext nor circumstantial evidence meeting the "specific and substantial" standard that shows Defendant's reasons are not credible.

Accordingly, Plaintiff does not raise a triable issue as to whether Defendant's actions were a pretext for discrimination or retaliation as to his EEO Claims 1, 2, 3, 4, 7 and that subpart of Claim 8 addressing the USPS management investigation of a hostile work environment complaint made by Plaintiff.

**IT IS THEREFORE ORDERED** granting Defendant Louis DeJoy's partial Motion for Summary Judgment. (Doc. 73). Defendant shall have Judgment as to Plaintiff's gender discrimination and retaliation counts underlain by EEO Claims 1, 2, 3, 4, 7 and the subpart of Claim 8 as set forth above.

**IT IS FURTHER ORDERED** that the parties must submit a Joint Report as to the status of Plaintiff's retaliation count underlain by EEO Claim 5 and that subpart of Claim 8 pertaining to USPS management investigation of a complaint of which Plaintiff was the subject, neither of which was addressed in the partial Motion for Summary Judgment, by **April 21, 2023**. *See supra* notes 3–4.

Dated this 30th day of March, 2023.

Honorable John J. Tuchi
United States District Judge